IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PATRECE KING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:05-CV-0026-D |
| VS. | § | |
| | § | |
| ENTERPRISE LEASING COMPANY | § | |
| OF DFW, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action alleging claims for race and sex discrimination
and retaliation under Title VII of the Civil Rights Act of 1964
("Title VII"), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and/or
the Texas Commission on Human Rights Act ("TCHRA"), Tex. Labor Code
Ann. § 21.001 *et seq.* (Vernon 2006),[1] and for breach of contract,
defendants move for summary judgment. Concluding that defendants
are entitled to the relief they seek, the court grants the motions.

I

Plaintiff Patrece King ("King"), an African-American female,
is a former employee of Enterprise Leasing Company of DFW

---

[1] "Chapter 21 was entitled the Texas Commission on Human Rights
Act until the abolishment of the Commission on Human Rights. In
2004, the 'powers and duties' of the Commission on Human Rights
were transferred to the Texas Workforce Commission Civil Rights
Division." *Tex. Dep't of Criminal Justice v. Guard*, 2007 WL
1119572, at *2 n.3 (Tex. App. 2007, no pet. h.) (not designated for
publication) (citations omitted) (citing *Little v. Tex. Dep't of
Criminal Justice*, 148 S.W.3d 374, 377-78 (Tex. 2004), and Tex.
Labor Code Ann. 21.0015 (Vernon 2006)). For clarity, the court
will refer to this claim as brought under the TCHRA.

("Enterprise-DFW") at its Dallas office.[2]  She began her career in April 1996 as a management trainee, eventually becoming a Loss Control Specialist, a position she held until she resigned in October 2004.

At issue here are King's claims that, based on her race and sex, she was denied equal pay, denied tuition reimbursement, denied a promotion, and subjected to a hostile work environment. King also alleges that she was retaliated against for complaining of discrimination, and that defendants are liable for breach of contract for failing to comply with an August 6, 2003 Settlement Agreement ("Agreement").[3]

King filed three separate discrimination and/or retaliation charges with the Equal Employment Opportunity Commission ("EEOC"). In her June 27, 2003 charge, King complained of race-based wage discrimination.  In an October 4, 2004 charge, she stated that her employer had denied her request for tuition reimbursement because of her race.  In her February 1, 2005 charge, King alleged race and

---

[2]The court recounts the evidence in a light favorable to King as the summary judgment nonmovant and draws all inferences in her favor.  *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

[3]As the court notes *infra* at § XI, defendants Enterprise Company and Enterprise-Texas move for summary judgment on the same grounds as does Enterprise-DFW.  Because the court holds that these defendants are entitled to summary judgment for the same reasons as is Enterprise-DFW, the court need not address any additional grounds on which these defendants rely.

sex discrimination based on the failure to transfer her past-due accounts to another employee in January 2004, her supervisor's refusal to recommend her for a promotional opportunity, and retaliation for filing her June 27, 2003 EEOC charge.

King later filed this suit against Enterprise-DFW, Enterprise Rent-A-Car Company ("Enterprise Company"), and Enterprise Rent-A-Car Company of Texas ("Enterprise-Texas"). She sues for race and sex-based discrimination, hostile work environment, and retaliation under Title VII, 42 U.S.C. § 1981,[4] and/or the TCHRA. King also sues for breach of contract arising from the Agreement that relates to her June 27, 2003 race discrimination charge.[5] Defendants move for summary judgment. King opposes the motions.[6]

II

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to . . . compensation . . . because of such individual's race . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1). Section 1981 guarantees

---

[4]King's sex-based discrimination claims are brought under Title VII and the TCHRA.

[5]King also relies in her summary judgment response on a claim for unequal pay brought under the Equal Pay Act of 1963, 29 U.S.C. § 206(d). As the court explains *infra* at § IV(B), this cause of action has not been pleaded and will not be considered on the merits.

[6]King has filed a single, corrected combined response brief to defendants' motions for summary judgment. In this memorandum opinion and order, the court will refer to this brief as "P. Br."

- 3 -

"[a]ll persons within the jurisdiction of the United States . . . the same right . . . to make and enforce contracts" regardless of race.  42 U.S.C. § 1981(a).  Under the TCHRA, "[a]n employer commits an unlawful employment practice if because of race [or] sex . . . the employer . . . discharges an individual or discriminates in any other manner against an individual . . . ."  Tex. Labor Code Ann. § 21.051 (Vernon 2006).  Claims of race discrimination brought under Title VII, § 1981, and the TCHRA, and of sex discrimination brought under Title VII and the TCHRA, are governed by the same evidentiary framework.  *See LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996) (addressing Title VII and § 1981); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999) (addressing Title VII and the TCHRA).

Because Enterprise-DFW will not have the burden of proof at trial on King's claims, it can meet its summary judgment obligation by pointing the court to the absence of evidence to support them. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once it does so, King must then go beyond her pleadings and designate specific facts showing there is a genuine issue for trial.  *See id*. at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  Summary judgment is mandatory if King fails to meet this burden.  *See Little*, 37 F.3d at 1076.  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). King's failure to produce proof as to any essential element renders all other facts immaterial. *See Edgar v. Gen. Elec. Co.*, 2002 WL 318331, at *4 (N.D. Tex. Feb. 27, 2002) (Fitzwater, J.) (citing *Celotex Corp.*, 477 U.S. at 323).

In the context of her race discrimination claims under Title VII, § 1981, and the TCHRA, and her sex discrimination claims under Title VII and the TCHRA, King must present sufficient direct or circumstantial evidence that would permit a reasonable jury to find that her race or sex was a motivating factor in Enterprise-DFW's decisions. *See, e.g., Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004) (addressing Title VII claims for race, sex, and age discrimination). "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (Fitzwater, J.) (age discrimination case) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)). Such evidence of discrimination, however, is rare. *See, e.g., Rutherford v. Harris County, Tex.*, 197 F.3d 173, 180 n.4 (5th Cir. 1999) (Fitzwater, J.) (stating that "direct evidence . . . 'is rare in discrimination cases, [and] a plaintiff must ordinarily use circumstantial evidence to satisfy her burden of persuasion.'") (brackets in original) (quoting *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993

- 5 -

(5th Cir. 1996) (en banc)).   A plaintiff who offers "sufficient direct evidence of intentional discrimination should prevail, just as in any other case where a plaintiff meets his burden." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996) (citing *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 n.6 (5th Cir. 1994)).

Because King has not adduced direct proof of race or sex discrimination, she must rely on circumstantial evidence.   King can prove discrimination using the "modified *McDonnell Douglas* approach." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case).   As modified, *McDonnell Douglas* consists of three stages.

First, King must establish a prima facie case of discrimination that, if demonstrated, "creates a presumption that [Enterprise-DFW] unlawfully discriminated against [her]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Second, the burden then shifts to Enterprise-DFW to articulate a legitimate, nondiscriminatory reason for the adverse employment action about which she complains. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).   Enterprise-DFW's burden is one of production, not persuasion, and involves no credibility assessments. *See, e.g., West*, 330 F.3d at 385.

Third, if Enterprise-DFW meets its production burden, then King may proceed under one of two alternatives: the pretext

alternative or the mixed-motives alternative.  *See Rachid*, 376 F.3d at 312.  Under the pretext alternative, King must "offer sufficient evidence to create a genuine issue of material fact . . . that [Enterprise-DFW's] reason is not true, but is instead a pretext for discrimination."  *Id.* (internal quotations omitted).  Under the mixed-motives alternative, King must offer sufficient evidence to create a genuine issue of material fact "that [Enterprise-DFW's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [King's] protected characteristic[.]"  *Id.* (internal quotations omitted).

### III

Enterprise-DFW moves for summary judgment dismissing King's unequal pay claim brought under Title VII, § 1981, and the TCHRA. It posits that, to the extent the claim is based on conduct that occurred on or before August 6, 2003, it is completely barred by the Agreement;[7] that King failed to exhaust her Title VII- and TCHRA-based unequal pay claims to the extent based on conduct that occurred after August 6, 2003; and that she cannot establish a prima facie case, Enterprise-DFW has articulated a legitimate, nondiscriminatory reason for its decision, and King cannot prove pretext.

---

[7]In view of the court's decisions *infra* that King did not exhaust her claims or that she has failed to establish a prima facie case, the court need not address this argument.

A

The court considers first whether King exhausted her unequal pay claims under Title VII and TCHRA to the extent based on conduct that occurred after August 6, 2003.

"The [TCHRA] requires the exhaustion of state remedies as a jurisdictional prerequisite." *Jones v. Grinnell Corp.*, 235 F.3d 972, 974 (5th Cir. 2001) (citing *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991)). "If a complainant fails to exhaust his state administrative remedies, the [TCHRA] jurisdictionally bars this court from hearing the case regardless of equitable and policy concerns." *Id.* (citing *Zevator v. Methodist Hosp. of Houston*, 1995 WL 500637, at *2 (S.D. Tex. Mar. 30, 1995); *Ridgway's Inc. v. Payne*, 853 S.W.2d 659, 663 (Tex. App. 1993, no writ)). "In order to comply with this exhaustion requirement, an employee must: (1) file a complaint with the [Texas Commission on Human Rights ("TCHR")] within 180 days of the alleged discriminatory act; (2) allow the TCHR to dismiss the complaint or resolve the complaint within 180 days before filing suit; and (3) file suit no later than two years after the complaint is filed." *Wiltshire v. Humpal Physical Therapy, P.C.*, 2005 WL 2091092, at *2 (Tex. App. Aug. 31, 2005, no pet.) (not designated for publication); *City of Houston v. Fletcher*, 63 S.W.3d 920, 922 (Tex.

App. 2002, no pet.).[8]   A complaint filed with the EEOC, and forwarded by the EEOC to the TCHR, satisfies the requirements of the TCHRA.  *Price v. Philadelphia Am. Life Ins. Co.*, 934 S.W.2d 771, 773-74 (Tex. App. 1996, no writ).  "[E]xhaustion occurs when the complainant files a timely charge with the commission and waits 181 days to file suit."  *City of Houston*, 63 S.W.3d at 922.

Similarly, the filing of an administrative complaint is ordinarily a jurisdictional prerequisite to a Title VII action. *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995) (citing *Ray v. Freeman*, 626 F.2d 439, 442 (5th Cir. 1980)).[9]  Federal courts do not have jurisdiction to consider unexhausted Title VII claims. *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 711 (5th Cir. 1994) (citing *Tolbert v. United States*, 916 F.2d 245, 247-48 (5th Cir. 1990) (per curiam)). Exhaustion does not occur until the plaintiff files a timely charge with the EEOC and is entitled to receive a "right-to-sue" letter.

---

[8]As noted, *see supra* note 1, the powers and duties of the TCHR have been transferred to the Texas Workforce Commission Civil Rights Division.

[9]The court recognizes that there is a split of authority within the Fifth Circuit about whether exhaustion implicates the court's subject matter jurisdiction.  *See Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006) ("There is disagreement in this circuit on whether a Title-VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction.").  For purposes of this decision, the court will address exhaustion in jurisdictional terms, but it notes that the result would be the same even if the court considered exhaustion to be "merely a prerequisite to suit."

42 U.S.C. § 2000e-5(e) and (f); *see also Taylor v. Books a Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002).  "The lawsuit that follows is limited in scope to the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination.  In other words, the complaint may encompass any kind of discrimination 'like or related to' allegations contained in the EEOC charge." *Hayes v. MBNA Tech., Inc.*, 2004 WL 1283965, at *6 (N.D. Tex. June 9, 2004) (Fitzwater, J.) (citations omitted).

B

Enterprise-DFW argues that King's only discrimination charge that included a race-based unequal pay claim was the June 27, 2003 charge, this charge was resolved by the August 6, 2003 Agreement, and the EEOC subsequently closed its investigation; that King's October 4, 2004 and February 1, 2005 charges did not allege race-based unequal pay, and no EEOC charge alleged sex-based unequal pay; and that King has failed to exhaust her administrative remedies.

King does not specifically respond to these arguments. Instead, she focuses on the validity and scope of the August 6, 2003 Agreement in an attempt to prevail on claims based on discriminatory acts that occurred before that date.[10]  Absent argument or evidence that relates to exhaustion, and discerning no

---

[10]King does not advance any claims based on discriminatory acts that occurred before August 6, 2003.

- 10 -

basis in the summary judgment record to hold that King has exhausted her administrative remedies under Title VII and the TCHRA with respect to her race- and sex-based unequal pay claims based on conduct that occurred after August 6, 2003, the court holds that Enterprise-DFW is entitled to summary judgment dismissing these claims to that extent.[11]

IV

The court now considers whether Enterprise-DFW is entitled to summary judgment dismissing King's unequal pay claims based on conduct that occurred on or before August 6, 2003.

A

To establish a prima facie case of a violation of Title VII, § 1981, or the TCHRA based on unequal pay, King must prove that she was being paid less than a member of a different race or sex for work requiring substantially the same responsibility. *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. Unit A May 1981) (addressing unequal pay and constructive discharge claims). Enterprise-DFW argues that King's unequal pay claim fails because she cannot establish a prima facie case, and, alternatively, she cannot demonstrate pretext.[12] It points to the

---

[11]King's unequal pay claims would also fail, even assuming that they were properly exhausted, for reasons explained below.

[12]Enterprise-DFW fails to identify explicitly a legitimate, nondiscriminatory reason for King's allegedly unequal pay. But this is not fatal to its motion because the court need not reach the second stage of the *McDonnell Douglas* framework or address

absence of evidence that King was paid less than non-African-American or male employees who performed substantially the same work. Enterprise-DFW maintains that King's identification of Sarah Kiley ("Kiley") as a comparator is misplaced, because the evidence shows that Kiley was actually paid less than King,[13] and that King was the highest paid Loss Control employee from August 2003 until her resignation. Enterprise-DFW also posits that King has failed to identify any relevant comparator whose work involved substantially the same responsibilities.

King responds that she has "more than enough evidence" to establish a prima facie violation of Title VII and the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d). She contends that Enterprise-DFW's arguments are undercut by its failure to substantiate a legitimate, nondiscriminatory reason for the pay differential. King also maintains that Enterprise-DFW's failure to produce pay records for male comparators is an "intentional misdeed," in derogation of an order of the magistrate judge, and that this conduct "constitutes a pattern and practice of discrimination." She challenges as "self-serving" and unsupported

---

pretext.

[13]Enterprise-DFW relies on ¶¶ 9-11 of the declaration of Michele Stang ("Stang"). On September 27, 2006 King filed a motion to strike all or parts of the declarations of Stang and Gretchen Burkhart ("Burkhart"). Because the court is not relying on the parts of the Stang and Burkhart declarations to which King objects, it denies the motion to strike as moot.

by the record evidence Enterprise-DFW's assertion that she was the highest paid Loss Control employee.

King cites the deposition testimony of Scott Yaguchi ("Yaguchi"), the General Manager of Enterprise-DFW, to support her apparent claim that Enterprise-DFW is liable under the EPA and/or Title VII for race-based pay discrimination. She posits that the EPA and Title VII require that Enterprise-DFW explain any pay disparity through the affirmative defenses of merit, production, seniority, or a factor other than sex, none of which has been pleaded. King also maintains that under Fed. R. Civ. P. 26 and 37, any assertion made regarding an employee's pay that was not produced during discovery is inadmissible.

Enterprise-DFW replies that Kiley is the only wage comparator whom King has identified, and it posits that her EPA claim is barred because she did not plead it. Enterprise-DFW argues that the cited testimony of Yaguchi "mistakenly" refers to a pay disparity between Kiley and King that existed prior to King's June 27, 2003 race-based unequal pay charge. In view of the Agreement and King's apparent abandonment of Kiley as a comparator, Enterprise-DFW maintains that Yaguchi's testimony is irrelevant. It also asserts that King is now attempting to rely on an improperly-raised EPA claim alleging sex-based pay discrimination

that is unexhausted,[14] and for which there is no evidentiary support. Enterprise-DFW argues that King's failure to identify any relevant Caucasian male comparator is fatal to her claim, and it posits that despite King's assertions, it complied with the magistrate judge's order by providing King, on at least three occasions, compensation information for comparable male employees.

B

The court declines to consider King's EPA claim because she did not plead it and instead raises it improperly for the first time in her summary judgment response. *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *1 n.1 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (citing *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

C

The court now considers King's race- and sex-based unequal pay claims under Title VII, § 1981, and/or the TCHRA. These claims are subject to the modified *McDonnell Douglas* burden-shifting framework. King must therefore establish a prima facie case of discrimination, which "creates a presumption that [Enterprise-DFW] unlawfully discriminated against [her]." *Burdine*, 450 U.S. at 254.

---

[14]"[EPA] claims do not require exhaustion of administrative remedies." *Stith v. Perot Sys. Corp.*, 122 Fed. Appx. 115, 119 (5th Cir. 2005) (citation omitted).

The court holds that King has failed to meet her burden of establishing a prima facie case.

King's assertion that she has "more than enough" evidence to establish a violation is merely an unsworn, conclusory allegation. "[C]onclusory allegations . . . and unsubstantiated assertions are inadequate" to defeat summary judgment. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (internal quotation marks omitted) (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc)); *see also Lawrence v. Univ. of Tex. Med. Branch*, 163 F.3d 309, 313 (5th Cir. 1999) (per curiam) ("[A] subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief.") (second alteration in original) (quoting *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983)); *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir. 1995) ("Bald assertions of . . . discrimination are inadequate to permit a finding that proscribed discrimination motivated [defendant's] actions against [the plaintiff].").

Neither can King avoid her burden merely by pointing to Enterprise-DFW's failure to articulate or adduce evidence of a legitimate, nondiscriminatory reason for the alleged pay disparity. Enterprise-DFW has discharged its initial burden as the summary judgment movant of pointing the court to the absence of evidence of a prima facie case of race- and sex-based pay discrimination. To survive summary judgment, King is obligated to adduce evidence that

is sufficient to establish a prima facie case. Enterprise-DFW's alleged failure to articulate or support with evidence a legitimate, nondiscriminatory reason for the alleged pay disparity does not relieve King of this initial burden, which sequentially precedes Enterprise-DFW's burden of production. *See Burdine*, 450 U.S. at 254. King's challenge to the evidentiary sufficiency and self-serving nature of Enterprise-DFW's assertion that King was the highest paid Loss Control employee is similarly insufficient to relieve King of this obligation.

King's reliance on the Yaguchi deposition to raise a fact issue regarding whether she was the victim of racially discriminatory wages is also misplaced. Yaguchi testified that Gretchen Burkhart ("Burkhart"),[15] a former Group Human Resources Manager at Enterprise-DFW,

> had told me that pay disparity, she felt that it was what you just said, based on race. She looked into it and found —— found a small discrepancy, and last that I knew, she worked it out.

P. App. 305. Enterprise-DFW posits, and King does not appear to dispute, that Yaguchi was referring to the putative pay disparity that existed between Kiley and King. But as the court has already held, to establish a prima facie case of race-based pay

---

[15]The court has denied as moot King's motion to strike Burkhart's declaration. *See supra* note 13. The court's consideration, at King's urging, of Yaguchi's testimony concerning what Burkhart said, is not inconsistent with the court's decision regarding King's motion to strike Burkhart's declaration.

discrimination, King must show not only that she was being paid less than a member of a different race, but also that the alleged comparator's job required substantially the same level of responsibility. *See Pittman*, 644 F.2d at 1074.  Thus even assuming that Yaguchi's testimony is competent evidence and is probative of the existence of a pay disparity between Kiley and King, King has failed to point the court to evidence that Kiley's job carried substantially the same responsibility, and King appears to have abandoned Kiley as a relevant comparator.  *See* P. Br. 23 ("Plaintiff's unequal pay claim is premised upon her assertions that she was paid less than her [*Caucasian*] *male* peers . . . ." (emphasis added)).  Moreover, Yaguchi's testimony that Burkhart told him that the disparity was "based on race" is conclusory, and is in any case insufficient to establish a prima facie case of race-based pay discrimination.

To the extent King advances a sex-based pay discrimination claim under Title VII and the TCHRA, Yaguchi's testimony is insufficient to raise a genuine issue of material fact because Kiley and King are both female.  *See, e.g., Lowrey v. Texas A&M Univ. Sys.*, 11 F.Supp.2d 895, 907 (S.D. Tex. 1998) (holding that sex-based pay discrimination plaintiff must show she was paid less than a *nonmember* of the protected class).

King's reliance on Enterprise-DFW's purported failure to produce the pay records of unspecified male employee comparators is

also misplaced.  Insofar as it relates to her sex-based EPA claim, the court has already determined that the claim has not been pleaded and is not at issue.  The court therefore need only address whether Enterprise-DFW's alleged failure to produce the pay records is somehow sufficient to relieve King of her burden of establishing a prima facie case of race-based unequal pay under Title VII, § 1981, and the TCHRA, or sex-based unequal pay under Title VII and the TCHRA (assuming that those claims are properly raised).  The court now holds that it is not.

Even if produced, the pay records of the other employees would be insufficient of themselves to establish that a non-African-American or male employee's job encompassed substantially the same responsibilities as did King's.[16]  *See Pittman*, 644 F.2d at 1074; *Lowrey*, 11 F.Supp.2d at 907.  King has failed to identify a single non-African-American or male comparator, and thus has offered no basis on which to find that she was paid less than a non-African-American or male employee for work requiring substantially the same responsibilities.  Accordingly, to defeat summary judgment, she

---

[16]King only complains about the failure to produce *pay records* for male comparators.  She does not rely on any failure to produce evidence of a putative comparator's job responsibilities, or that the alleged failure to produce pay records has prevented her from identifying relevant comparators in the first place.  *See* P. Br. 24.

Moreover, the court is not persuaded by King's conclusory allegations—which are not supported by cited evidence—regarding defendants' alleged noncompliance with the magistrate judge's discovery order.

cannot rely on Enterprise-DFW's alleged failure to produce pay records.  And, even if Enterprise-DFW failed during discovery to produce records, the court rejects as lacking merit her assertion that this conduct constitutes "a pattern and practice of discrimination."  P. Br. 25.

Neither can King defeat summary judgment by relying on Enterprise-DFW's failure to plead affirmative defenses explaining the pay disparity.  Even if the court assumes *arguendo* that the Bennet Amendment incorporates into the Title VII framework the EPA's affirmative defenses of merit, production, seniority, or a factor other than sex, *see, e.g., Kouba v. Allstate Insurance Co.*, 691 F.2d 873, 874 n.2 (9th Cir. 1982) (citing 42 U.S.C. § 2000e-2(h)), it does not follow that the availability of these defenses in a Title VII sex-based wage discrimination is itself sufficient to relieve King of her burden as the plaintiff and summary judgment nonmovant of establishing a prima facie case of sex-based wage discrimination.

Accordingly, the court holds that King has failed to establish a prima facie case of race-based or sex-based pay discrimination and that Enterprise-DFW is entitled to summary judgment on these claims.

V

King alleges that Enterprise-DFW discriminated against her by denying her November 14, 2003 request for tuition reimbursement for

- 19 -

three courses that she took as part of a masters degree program.

A

Enterprise-DFW posits that King's request was denied under its discretionary reimbursement program, and that the denial does not constitute an adverse employment action. It relies in part on the declaration of Michele Stang ("Stang"), in which she avers that Enterprise-DFW does not provide tuition reimbursement for employees pursing masters degrees or other advanced degrees.[17] Enterprise-DFW also posits that its discretionary reimbursement program repeatedly states that it will consider reimbursement requests, and that it may decline in its discretion to reimburse some or all of the costs.

Enterprise-DFW also contends that King has failed to show that the denial negatively impacted her job duties, compensation, or available benefits, and it maintains that she has failed to identify a similarly situated employee outside the protected class who was treated more favorably. It argues that Tamarah Henson ("Henson"), whom King identifies as a comparator, was not similarly situated because, unlike King, she was employed as an accountant and was responsible, *inter alia*, for creating financial statements and using management information systems. Moreover, it maintains that Henson sought reimbursement for courses that were directly

---

[17]As the court notes above, *see supra* note 13, the court denies as moot King's motion to strike Stang's declaration.

related to her duties as an accountant, while King requested that she be reimbursed for courses not directly related to her duties as a Loss Control Specialist.[18]

Enterprise-DFW argues in the alternative that King has failed to present evidence that its legitimate, nondiscriminatory reason for its discretionary denial was a pretext for discrimination. It asserts that King's request was denied because it did not meet the parameters of the reimbursement policy. Specifically, the courses for which she sought reimbursement were not directly related to handling claims, files, or insurance, and would not enhance her skills or knowledge in the exercise of her duties.

B

King appears to abandon any independent discrimination claim for the alleged denial of her tuition reimbursement request.[19] She instead posits that the denial is evidence that supports her hostile work environment and retaliation claims. *See* P. Br. 28. The court will accordingly address the merits of these allegations below, in the context of King's hostile work environment and retaliation claims. To the extent King is pursuing an independent discrimination claim based on Enterprise-DFW's alleged denial of

---

[18]According to Enterprise-DFW's undisputed statement of facts, King took courses entitled "Management and Organization," "Decision Making Tools and Techniques," and "Global Business." D. Br. 10.

[19]It is not clear that King ever asserted such a claim. *See* 3d. Am. Compl. 4-11.

her tuition reimbursement request, the claim is dismissed for lack of evidence to support a reasonable jury verdict in her favor. *See, e.g., Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.) ("Although [plaintiffs'] failure to respond [to the motion for summary judgment] does not permit entry of a 'default' summary judgment, the court is permitted to accept the movant's evidence as undisputed." (citation omitted)).

## VI

King also asserts a discrimination claim based on the failure of her manager, Mark Grainger ("Grainger"), to recommend her for a promotion to a Loss Control supervisor position.

### A

Enterprise-DFW argues that the September 2004 claim is the only one that is timely raised,[20] and that the conduct alleged in support of that claim does not constitute an adverse employment action because King has failed to adduce evidence demonstrating that her employment status would have changed had she received the recommendation.  In other words, Enterprise-DFW points to the absence of evidence that King would have been selected for the

---

[20]Although King states that she was never "again selected for or recommended for promotion after filing her EEOC charge," P. Br. 29, she does not specifically identify or refer to any incident in her response brief.  Accordingly, the court need not address the timeliness of any such unspecified claims, and it assumes that King is referring to the September 2004 incident.

position had Grainger recommended her for it.

Enterprise-DFW argues in the alternative that King has failed to adduce evidence that its legitimate, nondiscriminatory reason for Grainger's failure to recommend King for the position was pretextual.  It posits that Brian Oddy ("Oddy"), a Regional Vice President, and not Grainger, made the decision to recommend Lance Woodward ("Woodward"); the hiring decision was made by Todd Burkman, a manager in another region; and Oddy's decision was based on a number of factors, including Woodward's and King's respective performance reviews, an audit, and department head, peer, and Branch Manager feedback.  Enterprise-DFW contends that King's supervisor expressed concerns about her recent job performance; that King had documented performance problems, and at one point a Branch Manager requested a Loss Control Administrator other than King; and that Woodward had "exceeds requirements" ratings, "very good" production numbers, and received positive feedback from the Branch Managers with whom he worked.  Enterprise-DFW contends that King cannot prove pretext solely by showing that she was better qualified than Woodward, that the court should not substitute its own business judgment in place of Oddy's, and that King's subjective belief regarding her qualifications, and unsubstantiated assertions of discrimination, are insufficient to avoid summary judgment.

B

King appears to abandon any independent claim based on Grainger's failure to recommend her for promotion in September 2004.  She instead offers these allegations in the context of her hostile work environment and retaliation claims.  The court will therefore consider them in the context of those claims, which the court addresses below.  To the extent King seeks to assert an independent claim based on a failure to recommend her promotion, the court dismisses the claim for lack of evidence sufficient to enable a reasonable jury to return a verdict in her favor.  *See, e.g., Tutton*, 733 F. Supp. at 1117.

VII

The court now considers King's hostile work environment claim.[21]

Enterprise-DFW first posits that because none of King's three EEOC charges asserts a claim for hostile work environment, and the charges are limited to complaints about unequal pay, denial of a tuition reimbursement request, and failure to recommend for a promotion, her hostile work environment claim must be dismissed because it was not exhausted.  It argues that because nothing in

_____

[21]Ostensibly concerned about her failure to exhaust, King appears to abandon a TCHRA-based hostile work environment claim. But she continues to refer to Title VII and § 1981 hostile work environment claims.  Each claim fails regardless whether the legal basis is Title VII, § 1981, or the TCHRA, because King is unable to establish a prima facie case.

the charges was sufficient to put it on notice of a hostile work environment claim, and because such a claim could not reasonably be expected to grow out of the facts alleged in the charges, her Title VII and TCHRA-based hostile work environment claims are not within the subject matter jurisdiction of the court because they were not properly exhausted.  The court agrees.[22]  *See, e.g., Hayes*, 2004 WL 1283965, at *7 (holding that EEOC charge that complained of denial of promotions, unequal pay, and race discrimination did not exhaust hostile work environment claim; that passages on which plaintiff relied were not like or related to claim of racially hostile work environment; and that EEOC investigation of such claim could not reasonably be expected to grow out of charge).  Accordingly, King's hostile work environment claims under Title VII and the TCHRA are dismissed.  Moreover, assuming *arguendo* that these claims are properly exhausted, they fail for the same reasons as does her § 1981-based Enterprise-DFW claim.  *See infra* § VIII.

## VIII

The court now considers King's racially hostile work environment claim under § 1981.[23]

---

[22]As noted, the same result would obtain even if the court considered exhaustion to be "merely a prerequisite to suit." *See supra* note 9.

[23]This claim need not be exhausted.  *See, e.g., Alpha Portland Cement Co. v. Reese*, 507 F.2d 607, 608-10 (5th Cir. 1975). Additionally, it is limited to a race-based claim.  *See Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 343 (5th Cir. Nov. 1981) (holding that § 1981 applies to race discrimination).

A

To establish a prima facie case, King must show that (1) she belongs to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment complained of was based on race, (4) the harassment complained of affected a term, condition, or privilege of employment, and (5) Enterprise-DFW knew or should have known of the harassment in question and failed to take prompt remedial action. *See Ramsey*, 286 F.3d at 268. Harassment is based on race if "the complained-of conduct had a racial character or purpose." *Harris-Childs v. Medco Health Solutions, Inc.*, 2005 WL 562720, at *6 (N.D. Tex. Mar. 10, 2005) (Means, J.). Moreover, King must demonstrate a "connection between the allegedly harassing incidents and [her] protected status." *Id.* The fifth element need not be established if the harassment is allegedly committed by the victim's supervisor. *Celestine v. Petroleos de Venuzuella SA*, 266 F.3d 343, 353-54 (5th Cir. 2001); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

To meet the fourth element, King must demonstrate that the harassment affected a term, condition, or privilege of employment. "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ramsey*, 286 F.3d at 268

(internal quotations omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Title VII prohibits "a [racially] objectionable environment [that is] both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 787 (addressing sex discrimination) (citing *Harris*, 510 U.S. at 21-22); *see, e.g., Felton* v. *Polles*, 315 F.3d 470, 483-84 (5th Cir. 2002); *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1372 (5th Cir. 1992) (addressing race-based harassment).  "Actionable harassment must involve 'racially discriminatory intimidation, ridicule[,] and insults.'" *Felton*, 315 F.3d at 485 (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)) (applying Title VII case law to claim brought under 42 U.S.C. §§ 1981 and 1983); *see also Harris*, 510 U.S. at 21.  "In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Ramsey*, 286 F.3d at 268 (5th Cir. 2002) (quoting *Walker*, 214 F.3d at 625).  Merely offensive conduct is not actionable.  *Harris*, 510 U.S. at 21.

B

Enterprise-DFW contends there is insufficient evidence of unwelcome racial harassment, and it argues that there is no authority to support King's apparent contention that isolated comments regarding a branch preference and a single email seeking phone coverage for a receptionist (that was corrected by the Human Resources Department) constitutes unwelcome harassment.[24] It posits that the conduct is not actionable because there is no evidence that it was based on race; the alleged comments by one or more Branch Managers merely reflect a reluctance to work in locations with a high rate of repossession; and King admitted that she subjectively interpreted these comments as having a derogatory connotation for African-Americans, and her subjective belief alone is insufficient. Moreover, Enterprise-DFW contends that there is no evidence that the alleged email seeking phone coverage for the receptionist was based on racial animus.

Enterprise-DFW also posits that King's hostile work environment claim fails because the complained-of treatment was not sufficiently severe and pervasive, such that it affected a term, condition, or privilege of her employment. Thus her allegations that her supervisor was "rude" are insufficient. It maintains that

---

[24]As the court notes below, King does not refer to this evidence, much less expressly purport to rely on it, in her response brief. Enterprise-DFW draws this evidence from the April 21, 2006 deposition of King.

King did not complain about the alleged comments by the Branch Managers or alleged rudeness of her supervisor, and it posits that it corrected the perceived problem caused by the email requesting phone coverage.

King responds that "[a]t issue in the instant case is an ongoing culture of discrimination and retaliation against black employees as exemplified by an organization that is rife with discrimination at the highest levels of the company." P. Br. 27. She avers that "[t]he mentality and mind set exemplified by the Defendants' failure to even recognize and prevent discriminatory actions which occurred is evidence of Defendants' condoning or encouraging such behavior by its response or lack thereof." *Id.*

C

King's vague, generalized, and conclusory allegations are insufficient to avoid summary judgment. They are inadequate to permit a reasonable jury to find that King was subjected to unwelcome harassment, much less unwelcome harassment that was so "severe and pervasive" that it altered a term or condition of her employment.

King also asserts that Enterprise-DFW's failure to grant her tuition reimbursement request, and its "ongoing failure to promote" her after she filed and mediated her EEOC charge, is evidence of a hostile work environment. She relies on evidence that Henson was allowed to apply for reimbursement merely by presenting an

- 29 -

application, while she was required to submit an application and also provide a course syllabus.  She also posits that Eric Lee Seles ("Seles"), the Enterprise-DFW Operations Manager responsible for denying tuition reimbursement, admitted that the page in the Personal Policies and Benefits Summary to which Seles referred in denying King's request did not in fact set out a basis for denial.

Concerning Enterprise-DFW's alleged "ongoing" failure to promote her, King asserts that Grainger continued to try to find problems with her performance after her EEOC charge was resolved. She contends that Grainger kept a "significant events log" concerning her, conducted an audit of her claim files while she was out on sick leave related to her second pregnancy, and documented her for poor performance, which he placed in her personnel file. She also appears to rely on the principle that Title VII imposes an affirmative duty on an employer to seek out and eradicate a hostile work environment, and she seeks to impute liability to Enterprise-DFW based on its employees' conduct.

The court holds that none of these allegations, considered alone or in combination under a "totality of the circumstances" test, would enable a reasonable jury to find that King was subjected to a racially hostile work environment.  Even assuming that the conduct in question qualifies as unwelcome harassment, King has presented virtually no evidence that the conduct had a racial character or purpose. *See Harris-Childs*, 2005 WL 562720, at

*6.  Moreover, the isolated and largely conclusory allegations to which the court refers above are inadequate to establish the kind of "severe and pervasive" harassment sufficient to permit a reasonable jury to find in King's favor.  King has failed to adduce proof that would permit a reasonable finding of a "connection between the allegedly harassing incidents and [her] protected status." *Id.*

IX

King also alleges a retaliation claim.

A

Under the familiar burden-shifting paradigm, King must first establish a prima facie case.  This requires that she demonstrate that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action.  *Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)).

If King establishes a prima facie case, the burden shifts to Enterprise-DFW to articulate a legitimate, nondiscriminatory reason for the alleged retaliatory action taken.  This burden is one of production, not of persuasion.  If Enterprise-DFW meets its production burden, King must adduce evidence that would permit a reasonable jury to find that the adverse employment action would

not have occurred but for the protected conduct.  *See id.*  "At the summary judgment stage, the nonmovant need only point to the existence of a genuine issue of material fact." *Id.* (quoting *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (internal quotation marks omitted)).  "The ultimate determination in an unlawful retaliation case is whether the conduct protected . . . was a 'but for' cause of the adverse employment decision." *Id.* (quoting *Long*, 88 F.3d at 305 n.4) (internal quotation marks omitted).

"After the employer has produced evidence to rebut the employee's *prima facie* case of retaliation, the showing that the plaintiff must make to establish causation is more onerous than that initially required to present a *prima facie* case." *Phillips v. Credit Lyonnais*, 2002 WL 1575412, at *8 n.4 (N.D. Tex. July 16, 2002) (Fish, C.J.) (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 n.8 (5th Cir. 1998)); *Long*, 88 F.3d at 305 n.4). Evidence of temporal proximity between the protected act and the adverse employment action is alone insufficient to prove "but for" causation.

> To prevent future litigants from relying on temporal proximity alone to establish but for causation, we once again attempt to clarify the issue.  In *Clark County School District v. Breeden*, the Supreme Court noted that cases that accept mere temporal proximity as sufficient evidence of causality *to establish a prima facie case* uniformly hold that the temporal proximity must be very close. *Breeden* makes clear that (1) to be persuasive evidence, temporal proximity must be very close, and importantly (2) temporal proximity

> alone, when very close, can in some instances
> establish a *prima facie case* of retaliation.
> But we affirmatively reject the notion that
> temporal proximity standing alone can be
> sufficient proof of but for causation. Such a
> rule would unnecessarily tie the hands of
> employers.

*Strong v. Univ. HealthCare Sys., L.L.C.*, 482 F.3d 802, 808 (5th

Cir. 2007) (addressing Title VII) (emphasis in original)

(citations, internal quotation marks, and ellipsis omitted).

"Adverse employment actions include only ultimate employment

decisions such as hiring, granting leave, discharging, promoting,

or compensating." The Supreme Court "has recently broadened the

meaning of actionable adverse employment action for the purposes of

Title VII retaliation claims." *Wooten v. Fed. Express Corp.*, 2007

WL 63609, at *16 (N.D. Tex. Jan. 9) (Fitzwater, J.) (internal

quotation marks and citations omitted) (quoting *Newman v. Coll. of*

*Mainland,* 2006 WL 3391445, at *5 (S.D. Tex. Nov. 21, 2006);

*Rodriguez v. Gonzalez*, 2006 WL 2844185, at *4 (S.D. Tex. Oct. 2,

2006)), *appeal docketed*, No. 07-10555 (5th Cir. May 18, 2007).

> In [*Burlington Northern & Santa Fe Railway Co.*
> *v. White*, ___ U.S. ___, 126 S.Ct. 2405
> (2006),] the Court rejected the "ultimate
> employment decision" standard—an exclusive
> list of actions such as hiring, [g]ranting
> leave, discharging, promoting and
> compensating. The Court instead adopted the
> broader "material adverse standard"–meaning an
> action which might dissuade a reasonable
> worker from making a charge of discrimination
> or sexual harassment. The Fifth Circuit has
> not had occasion to address whether this new
> broader standard of adverse employment action
> in Title VII retaliation claims will also

- 33 -

apply to § 1983 retaliation claims.

*Wooten*, 2007 WL 63609, at *17 (quoting *Rodriguez*, 2006 WL 2844185, at *4 (citations omitted)).

> Nor has the Fifth Circuit as yet explicitly applied *Burlington* to a § 1981-based retaliation claim. Because such claims are generally analyzed under the same framework as are Title VII claims, and because § 1981 does not contain the language that prompted the Fifth Circuit to give the Title VII anti-retaliation clause a narrower reading in the first place, the court will apply *Burlington*'s more expansive standard. The court will deem to be an adverse employment action for purposes of § 1981-based retaliation any action that a reasonable employee would have found to be materially adverse, that is, one that might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

*Id.* (citing *Burlington*, 126 S. Ct. at 2415).

## B

Enterprise-DFW first posits that some of the discrete retaliatory acts on which King relies are barred for purposes of Title VII and the TCHRA because they occurred more than 300 days before she filed her February 1, 2005 EEOC charge. It maintains that the alleged retaliatory acts include (1) her April 2003 evaluation, (2) Grainger's failure to assign her "dead files" to another employee in January 2004, and (3) Yaguchi's alleged failure to hire or allow King to apply for a position as

Diversity/Multi-Cultural Relations Manager in 2003.[25]

Enterprise-DFW next argues that King has not established that she suffered any adverse employment action in the retaliation context.  It posits that there is no evidence that any of its actions would deter a reasonable person from making a discrimination charge.  Specifically, it maintains that taking employees on an outing without calling King (who was on maternity leave at the time), failing to advise her of a job posting while she was on maternity leave (for which she was able to apply on her return from work), rating her as "meets expectations" on evaluations, giving her a memorandum documenting performance problems, failing to recommend her for a particular promotional opportunity (over which her supervisor did not have decisionmaking authority), and failing to transfer certain files from King to another employee, even if true, are insufficient to produce the type of harm that the anti-retaliation provisions are intended to prevent.

Enterprise-DFW also argues that King has failed adequately to allege a "constructive discharge" because, to the extent she makes such a claim, the evidence shows that a reasonable employee in her position would not have felt compelled to resign.  It posits that it is undisputed that King was neither demoted, reassigned to

---

[25]King does not, however, purport to rely on, or adduce evidence in support of, these acts.

menial or degrading work, or subjected to badgering or harassment, nor did she receive an offer of early retirement that would have made her worse off or suffer a reduction in salary or job responsibilities.

Enterprise-DFW also contends that King's deposition testimony shows the absence of evidence to support the existence of a causal link between the alleged protected activity and the alleged retaliatory actions.   It posits that King confirmed that no Enterprise-DFW employee discouraged her from filing an EEOC charge or expressed dissatisfaction over the filing.    Moreover, Enterprise-DFW maintains that King admitted that she could not recall facts in support of her contention that Grainger's actions were causally connected to her EEOC charge, and that she knew of no facts in support of her retaliation claim insofar as it related to Yaguchi.   According to Enterprise-DFW, King testified that after her filing with the EEOC, she was not recommended for any other position with the company, but she also testified that it was simply her subjective belief that Yaguchi was involved. Enterprise-DFW also asserts that it has articulated a legitimate, nondiscriminatory reason for its alleged actions, points to the absence of evidence of pretext, and argues that King has failed to adduce any evidence from which a reasonable jury could find retaliation.

King responds that her allegations regarding Enterprise-DFW's

denial of her tuition reimbursement request and failure to recommend her for promotion subsequent to the filing and mediation of her June 27, 2003 EEOC charge constitute proof of retaliation. She makes several other assertions that appear to be offered to support her retaliation claim.[26]  But King's evidence is no more sufficient in the retaliation context than it is in the context of the hostile work environment claim that the court has rejected above.  At a minimum, King has failed to adduce evidence that would permit a reasonable jury to find a causal connection between a protected activity and an adverse employment action.

C

Assuming *arguendo* that Enterprise-DFW's alleged denial of her tuition reimbursement request is sufficient to state a prima facie case of retaliation, Enterprise-DFW has articulated a legitimate, nondiscriminatory reason for doing so: that the courses were related to an advanced degree and not directly related to her job duties.  King has offered virtually no evidence that this reason was pretextual.[27]

To the extent King may be attempting to rely on the Seles

---

[26]King does not respond to Enterprise-DFW's arguments concerning constructive discharge, and the court concludes that she has failed to establish that a reasonable jury could find that she was constructively discharged.

[27]King also suggests that while she was required to supplement her application, Henson was not.  Taken alone, this does not rise to the level of a retaliatory action, even under the definition adopted in *Burlington*, 126 S.Ct. at 2411.

deposition to prove pretext, this evidence is insufficient to enable a reasonable jury to find that reasons for denying King reimbursement were pretextual.  At most, the Seles deposition shows Seles' admission that the courses in "Management and Organization," "Decision Making Tools and Techniques," and "Global Business" could be seen as generally relevant to *any* employee's job duties.  This does not undercut Seles' conclusion that these courses were not "directly related" to King's job duties.  Moreover, the cited portion of the Seles deposition does not undermine Enterprise-DFW's other articulated basis for denying her request: that tuition reimbursement is generally not granted for advanced degree courses. And King has adduced almost no proof of a causal link between her filing the EEOC charge and the subsequent denial of her tuition reimbursement request.[28]

Similarly, Enterprise-DFW's alleged failure to recommend King for a promotion in September 2004 is insufficient to establish retaliation, because even assuming that King has established a prima face case, she offers almost no evidence that Enterprise-DFW's legitimate, nondiscriminatory reasons for recommending and hiring Woodward were pretextual.  King appears to

---

[28]To the extent King is implicitly suggesting that causation is established based on the temporal proximity between the filing of her initial EEOC charge in October 2003 and the denial of reimbursement in November 2003, temporal proximity alone is not sufficient in this case to raise a genuine issue of material fact. *See Strong*, 482 F.3d at 808.

argue that Enterprise-DFW's contention that Grainger did not recommend her because of her poor performance is a pretext for race- or sex-based discrimination, because Grainger was himself identified in her initial EEOC charge as having discriminated against her.  But this is insufficient of itself to enable a reasonable jury to find pretext.[29]  Moreover, King offers virtually no proof that Enterprise-DFW's failure to recommend her for promotion is causally connected to her filing the EEOC charge.

Accordingly, the court grants Enterprise-DFW's motion for summary judgment on King's retaliation claim.

X

King also alleges a breach of contract claim related to the August 6, 2003 Agreement.  She avers that under the terms of the Agreement, Enterprise-DFW was prohibited from discriminating or retaliating against her as a result of her filing an EEOC charge.

Enterprise-DFW argues that the conduct on which King relies to support her breach of contract claim is the same as that alleged to establish her discrimination and retaliation claims, and that the contract claim fails for the same reasons.  In her response brief, King relies solely on a retaliation theory of breach of contract. She relies only on the contention that, after she settled her wage claim, she was never again promoted or recommended for promotion.

---

[29]The additional allegations that King offers are conclusory or not probative of pretext.

She relies on the same evidence here as she does in the context of her Title VII and § 1981 retaliation claims.

Enterprise-DFW has demonstrated that King's breach of contract claim is essentially a contractual overlay on, and duplicative of, her retaliation claim. Because the court holds that Enterprise-DFW is entitled to summary judgment dismissing that claim on the merits, and since King does not rely on other evidence or discrete claims to prevail on a breach of contract claim, the court concludes that Enterprise-DFW is entitled to dismissal of her breach of contract claim as well.[30]

## XI

Defendants Enterprise Company and Enterprise-Texas move for summary judgment on the same grounds as does Enterprise-DFW. They also seek summary judgment on the ground that they were never King's employer and cannot be held liable under the special circumstances that render a non-employer liable. Because the court holds that Enterprise Company and Enterprise-Texas are entitled to summary judgment for the same reasons as is Enterprise-DFW, it need not address the additional grounds on which Enterprise Company and Enterprise-Texas rely.

---

[30]Moreover, King offers no basis for the court to conclude that the contract claim *does not* stand or fall on the same reasoning.

*       *       *

For the reasons explained, defendants' September 1, 2006 motions for summary judgment are granted, and King's suit is dismissed with prejudice by judgment filed today.

**SO ORDERED.**

July 11, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE